1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17

| | | |
|---|---|---|
| BILLIE PHILLIPS, | ) | Civil No. 12cv01884 AJB (MDD) |
| Plaintiff, | ) ) | ORDER GRANTING IN PART AND |
| v. | ) | DENYING IN PART DEFENDANT'S |
| | ) | MOTION TO DISMISS |
| NOETIC SPECIALTY INSURANCE | ) | |
| COMPANY, *a Vermont Corporation*, and | ) | |
| DOES 1 through 100, | ) | [Doc. No. 3] |
| | ) | |
| Defendants. | ) | |
| | ) | |

18
19
20
21

    Before the Court is Defendant Noetic Specialty Insurance Company's Motion to Dismiss
Plaintiff's Complaint, filed August 9, 2012.  (Doc. No. 3.)  For the reasons set forth below, Defendant's
motion is GRANTED IN PART and DENIED IN PART.

22

### *Background*

23
24
25
26
27
28

    Defendant provided liability insurance coverage to Electric Mobility Corporation, a New Jersey
Corporation, doing business as The Rascal Company ("EMC").  (Compl. ¶ 12.)  Defendant issued EMC
a Medical Technology - Life Sciences Products/Completed Operations Liability Coverage Form, policy
no. N09NJ380010, with a "policy period" from September 1, 2009, to September 1, 2010.  (*Id.* at ¶ 17.)
The policy provides primary Products and Completed Operations Liability Coverage and includes policy
limits of $2,000,000 for each occurrence and aggregate.  (*Id.*)  The policy is in excess of a $500,000

12cv01884

self-insured retention ("SIR") provision. (*Id.*) Defendant's obligations under the terms of the policy are in dispute, and the applicable provisions are discussed further below.

In August 2006, a representative of EMC visited Plaintiff's home and sold her husband, Mr. Phillips, a motorized scooter. (*Id.* at ¶ 14.) On February 29, 2008, Plaintiff's husband was traveling in the scooter, and it toppled over. (*Id.* at ¶ 16.) Among other injuries, Mr. Phillips' hip was crushed in the accident. (*Id.*) Mr. Phillips filed a civil lawsuit against EMC in San Diego Superior Court on February 25, 2010. (*Id.* at ¶ 22.)

On or about July 1, 2010, EMC reported Mr. Phillip's pending lawsuit to Defendant, as its liability insurance carrier. (*Id.* at ¶ 23.) Thereafter, Defendant assumed control over the case pursuant to the terms of EMC's policy and assigned EMC's defense to Defendant's panel counsel in San Diego. (*Id.* at ¶ 24.) In approximately March of 2011, defense counsel notified Plaintiff that EMC was insolvent. (*Id.* at ¶ 25.) Subsequently, defense counsel requested leave to withdraw from service as EMC's counsel in the case, which the court allowed by order entered April 5, 2011. (*Id.* at ¶ 26.) On April 13, 2011, EMC's answer was struck and default was entered against EMC. (*Id.* at ¶ 27.) On June 16, 2011, the court entered judgment against EMC and in favor of Mr. Phillips in the amount of $1,052,982.10. (*Id.* at ¶ 29.) Plaintiff alleges that Defendant took no action to protect its interests and defend against Mr. Phillip's claim following the entry of default or the entry of judgment. (*Id.* at ¶¶ 28, 30.)

Mr. Phillips passed away on December 10, 2011, and the judgment against EMC became an asset of his estate. (*Id.* at ¶ 31.) As executor of his estate and the sole trustee of their joint revocable trust, Plaintiff alleges that she possesses the right to enforce the judgment. (*Id.*) Plaintiff contends that the judgment became final on December 12, 2011, and that Defendant is now bound by the judgment as a result of the liability policy issued to EMC. (*Id.* at ¶¶ 32, 33.)

Prior to his passing away, Mr. Phillips sent Defendant a request for payment on the judgment pursuant to EMC's policy. (*Id.* at ¶ 35.) On August 16, 2011, Defendant denied coverage for the entire judgment on the basis of EMC's $500,000 SIR provision, claiming that liability under the policy was "not triggered until . . . [EMC] PAYS the judgment." (*Id.* at ¶ 36.) In December 2011, Mr. Phillips requested a copy of EMC's policy and Defendant's itemized accounting showing the status of EMC's

1    SIR.  (*Id.* at ¶ 37.)  Defendant provided a copy of the policy on January 4, 2012, but did not disclose the

2    status of EMC's SIR.  (*Id.* at ¶ 38.)  Plaintiff contends that Defendant represented to them that EMC had

3    not made any payments that would erode the $500,000 SIR.  (*Id.*)

4              On May 15, 2012, Plaintiff submitted the judgment to Defendant for payment "less the

5    unsatisfied amount of EMC's SIR" and requested Defendant's itemized accounting for EMC's SIR.  (*Id.*

6    at ¶ 40.)  Again, Defendant refused to pay the judgment citing its previous denials and claimed that

7    coverage was no longer possible as EMC is no longer in business.  (*Id.* at ¶ 41.)

8              Plaintiff filed this action in state court on July 17, 2012.  Plaintiff contends that Defendant's

9    refusal to pay the judgment amount less EMC's SIR is in violation of California law as well as EMC's

10   liability insurance policy.  Plaintiff alleges three causes of action: (1) Direct Action for Damages Under

11   Insurance Code § 11580; (2) Breach of Third-Party Beneficiary Contract; and (3) Breach of the Implied

12   Covenant of Good Faith and Fair Dealing.  On August 9, 2012, Defendant filed the pending Motion to

13   Dismiss. (Doc. No. 3.)

14                              ***Legal Standard***

15             Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim

16   showing that the plaintiff is entitled to relief ... [to] give the defendant fair notice of what the ... claim is

17   and the grounds upon which it rests."  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A

18   court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it lacks sufficient

19   facts to state a claim to relief that is plausible on its face.  *See id.* at 570.  "A claim has facial plausibility

20   when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

21   defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

22   *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it

23   asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550

24   U.S. at 556).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

25   factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

26   more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

27   do.  Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*,

28   550 U.S. at 555 (citations and parentheticals omitted).

1    In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true

2    and construe them in the light most favorable to the plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 93-94

3    (2007); *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  Courts may consider

4    documents attached to the complaint[1] or properly the subject of judicial notice, such as matters of public

5    record.[2]  "Although generally the scope of review on a motion to dismiss for failure to state a claim is

6    limited to the Complaint, a court may consider evidence on which the complaint necessarily relies if: (1)

7    the complaint refers to the document; (2) the document is central to the plaintiffs' claim; and (3) no party

8    questions the authenticity of the copy attached to the 12(b)(6) motion.*"  Daniels–Hall v. Nat'l Educ.

9    Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks and citations omitted).  The court

10   may "treat such a document as 'part of the complaint, and thus may assume that its contents are true for

11   purposes of a motion to dismiss under Rule 12(b)(6).' "  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.

12   2006) (quoting *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).  If the court dismisses the complaint,

13   it should grant leave to amend even if no request to amend is made "unless it determines that the

14   pleading could not possibly be cured by the allegation of other facts." Fed. R. Civ. P. 12(b)(6).

15                                              *Discussion*

16           As an initial matter, Defendant provided a copy of the policy as an attachment to the pending

17   motion to dismiss and asks that the Court consider it when ruling on the motion.  (Policy, Doc. No. 3-2.)

18   Plaintiff referenced the policy issued by Defendant to EMC throughout her Complaint, but did not attach

19   a copy of the policy to the Complaint.   Plaintiff refers to the policy provided by Defendant in her

20   response, and she has not raised an objection to its being treated as part of the Complaint as Defendant

21   requests.  Insomuch as the Complaint refers to the document, the document is central to Plaintiff's

22   claims, and no party questions the authenticity of the copy attached to Defendant's motion, the Court

23   will treat the attached policy as part of the Complaint for purposes of considering this motion.  *See*

24   *Daniels–Hall*, 629 F.3d at 998; *Marder*, 450 F.3d at 448.

25           Defendant's motion seeks dismissal of all three causes of action set forth in Plaintiff's Com-

26   plaint.  Specifically, Defendant contends: (1) Plaintiff's first claim should be dismissed because

27

28           [1] *Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

             [2] *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

12cv01884

1 California Insurance Code Section 11580 is not applicable to EMC's policy as it was neither issued nor

2 delivered in California; (2) Plaintiff's second claim should be dismissed because Plaintiff is not a third-

3 party beneficiary to the insurance policy with the right to bring suit thereunder; and (3) Plaintiff's third

4 claim should be dismissed because Plaintiff has not pled sufficient facts to allege breach of the implied

5 covenant of good faith and fair dealing.

6 **A. Plaintiff's California Insurance Code Section 11580 Claim**

7       Plaintiff's first cause of action alleges that Defendant failed to pay the judgment entered against

8 EMC as required by California law.  (Compl., Doc. No. 1-3, ¶¶ 46-61.)  California Insurance Code

9 Section 11580 provides that a policy insuring against losses "shall not be issued or delivered to any

10 person" in California unless it contains certain provisions.  Cal. Ins. Code § 11580.  Specifically,

11 policies issued and delivered in California must provide that:

12         whenever judgment is secured against the insured or the executor or administrator of a
deceased insured in an action based upon bodily injury, death, or property damage, then an
13         action may be brought against the insurer on the policy and subject to its terms and
limitations, by such judgment creditor to recover on the judgment.

14 Cal. Ins. Code § 11580(b)(2).  Defendant seeks dismissal of Plaintiff's Section 11580 claim, arguing that

15 the statute is inapplicable to the EMC policy as the policy was not "issued or delivered" in California.

16 (Def. Mot. Doc. No. 3-1, at 8.)  In response, Plaintiff contends that the "question of where the policy

17 was issued or delivered is wholly irrelevant to this case" because the policy contains language consistent

18 with Section 11580 which is thus enforceable on its own terms.  (Pl.'s Resp. Doc. No. 8 at 5.)  However,

19 Plaintiff framed her first cause of action as a claim for relief under Section 11580; therefore, Plaintiff's

20 claim necessarily depends upon whether the policy was issued or delivered in California as required by

21 Section 11580.  Plaintiff may not bring a cause of action pursuant to Section 11580 simply because the

22 relevant contractual language mimics that of Section 11580.  The statute must actually govern the policy

23 in order for Plaintiff to bring an action under its provisions.  Accordingly, whether the policy was issued

24 or delivered in California is an issue vital to the survival of Plaintiff's first cause of action.

25       Defendant contends, and the policy indicates, that the policy was issued in Virginia and

26 delivered to a broker in Pennsylvania.  *Id.* (citing EMC Policy, Doc. No. 3-2, at 7-8).  Plaintiff does not

27 suggest otherwise.  Rather, she contends that "the policy was issued to cover residents of this state as set

28 forth in Section 11580, and designed to indemnify residents of the state for wrongs committed here."

1  (Pl.'s Resp. Doc. No. 8, at 8.)  As support for this proposition, Plaintiff notes the following: (1)

2  Defendant was doing business in California through various agents and other representatives; (2) EMC's

3  sales representative came to Plaintiff's home in Oceanside to sell the scooter; and (3) the sales

4  representative was a resident of California at the time.  (*Id.* at 7-8.)  While the policy may have

5  connections to California, Section 11580 unambiguously requires that the policy be actually "issued or

6  delivered" in California.

7        Plaintiff offers *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.* as support for her

8  theory that sufficient contacts with the state of California can bypass the "issued or delivered"

9  requirement under Section 11580.  784 F.2d 1392 (9th Cir. 1986).  The policy at issue in *Haisten* was a

10  fund created in the Cayman Islands to provide self-funding indemnity insurance for a group of doctors

11  working together in a hospital.  *Id.* at 1395.  The doctors were all California residents, and the hospital

12  was located in California.  *Id*.  However, the court in *Haisten* determined that the fund was "carefully

13  and deliberately" created to appear to be doing business solely in the Cayman Islands in order to avoid

14  California insurance regulations.  *Id*.  Based on the particular nature of the fund and its obvious purpose,

15  the "insurance agreement explicitly concerned the indemnification of *California* physicians against

16  liability solely under *California* malpractice law." *Id.* at 1398 (emphasis in original).  For this reason,

17  the Ninth Circuit found that a sufficient basis for personal jurisdiction existed.  *Id.* at 1402.

18        After considering the policy's relationship with California relative to the issue of personal

19  jurisdiction, the Ninth Circuit next considered the applicability of Section 11580 to the policy.  The

20  Haisten policy was issued and delivered to a California doctor through his attorney-in-fact in the

21  Cayman Islands.  *(Id.* at 1395.)  Plaintiff contends that the Ninth Circuit found that Section 11580

22  applied because of the "strong link between the parties and the state of California."  (Pl.'s Resp. Doc.

23  No. 8 at 9.)  However, the Ninth Circuit did not actually consider the "issued and delivered" requirement

24  because it was not argued by the parties.  Specifically, the Ninth Circuit noted the following:

25          The district court concluded as a matter of law that the Fund's issuance and delivery of a policy
            to Dr. McClure, at the time a California resident, through his attorney-in-fact in the Cayman
26          Islands, constituted issuance and delivery within the meaning of Section 11580. While the Fund
            complains that this conclusion alone cannot support personal jurisdiction, it does not contest the
27          conclusion itself. Thus, the issue of applicability centers on whether the Fund's contract to
            indemnify Dr. McClure against loss (money paid) resulting from a judgment of malpractice
28          liability is within the scope of the statute.

1    *Id.* at 1403.  For this reason, *Haisten* is not controlling on Section 11580's "issued or delivered"

2    requirement.  Furthermore, the circumstances in *Haisten* are distinguishable from this case.  The

3    defendant in *Haisten* "made a tremendous effort to construct a transaction in such a way as to avoid the

4    appearance of contacts with California and thus the reach of the California courts."  *Id.* at 1396.  The

5    Ninth Circuit discerned that the policy's "only purpose was to provide insurance for California doctors

6    treating California patients and to avoid requirements imposed by California law."  *Id.*  In contrast, there

7    are no allegations in this case that Defendant or EMC made any effort to avoid California law when the

8    policy was created; the policy was simply issued and delivered in other states.  In all likelihood, this is

9    because both Defendant and EMC are located outside of California.  While EMC had contacts with the

10   state of California, it did business elsewhere and its insurance policy was not limited to claims arising in

11   California.  For this reason, the current situation is significantly different from the "unique case"

12   presented in *Haisten*.  *Id.* at 1396.

13          For the reasons set forth above, Plaintiff has failed to state a claim under Section 11580 of the

14   California Insurance Code.  Insomuch as the policy was neither issued nor delivered in the state of

15   California, the policy falls outside the scope of Section 11580.  To the extent that Plaintiff alleges that

16   the policy contains the same language as Section 11580 and is therefore legally enforceable against

17   Defendant, this argument lends itself to a contractual claim rather than a statutory claim.  Accordingly,

18   Defendant's Motion to Dismiss with regard to Plaintiff's first cause of action is granted, and Plaintiff's

19   Section 11580 claim is dismissed without prejudice.   Plaintiff is admonished that unless they can plead

20   "issued or delivered" on some credible basis, other than what has been advanced to date, a further

21   amendment of this claim may result in the imposition of sanctions.

22   **B. Plaintiff's Breach of Third-Party Beneficiary Contract Claim**

23          *1. Third-Party Beneficiary Status*

24          Plaintiff's second cause of action alleges that "Defendant breached the insurance contract with

25   Plaintiff as third-party beneficiary by denying Plaintiff's and her predecessor in interest, Mr. Phillips',

26   requests for payment of the judgment under the terms of the Policy."  (Compl. Doc. No. 1-3 ¶ 65.)

27   Specifically, Plaintiff cites the following policy provision as creating third-party beneficiary liability:

28          **5.  Legal Action Against Us**

No person or organization has a right under this Coverage Part:

    **a.** To join us as a party or otherwise bring us into a "suit" asking for "damages' from an insured; or

    **b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an "agreed settlement" or on a final "judgment" against an insured, but we will not be liable for "damages" that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance.

(Policy, Doc. No. 3-2 at 35.)  Plaintiff contends that this provision authorizes her to bring this action as a third-party beneficiary because of the final judgment entered against EMC.  (Compl., Doc. No. 1-3, ¶ 63.)

As a general rule, absent an assignment of rights or a final judgment, a third-party claimant may not bring a direct action against an insurance company on the contract because the insurer's duties flow only to the insured.[3]  Nonetheless, there are several exceptions to this general rule.  One such exception arises from Section 11580.  Once a party has a final judgment against the insured, the claimant becomes a third-party beneficiary of the insurance policy and may enforce the terms which flow to its benefit pursuant to Section 11580.  *See Harper v. Wausau Ins. Co.*, 66 Cal. Rptr. 2d 64, 68 ( 2d Dist. 1997); Cal. Ins. Code § 11580(b)(2).  Another recognized exception allows a claimant to sue the insurer as a third-party beneficiary utilizing traditional contract principals.  *Id.*  Under California law, third-party beneficiaries of contracts have the right to enforce the terms of a contract under Civil Code Section 1559, which provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."  Cal. Civ. Code § 1559.  Further, a third party may qualify as a beneficiary under a contract where the contracting parties intended to benefit that individual and such intent appears on the terms of the agreement.[4]

Here, Defendant's policy includes relevant language to expressly allow parties to bring suit against Defendant to recover on a final judgment against an insured.  (Policy, Doc. No. 3-2 at 35.) This language is similar to that from Section 11580. Insomuch as the language within subsection (b)(2) of

---

[3] *Harper v. Wausau Ins. Co.*, 56 Cal. App. 4th 1079, 1086 (2d Dist. 1997) (citing *J.C. Penney Casualty Ins. Co. v. M.K.*, 804 P.2d 689 (1991)); *Clemmer v. Hartford Ins. Co.,* 587 P.2d 1098 (1978); *Murphy v. Allstate Ins. Co.*, 553 P.2d 584 (1976).  *See also* 39A Cal. Jur. 3d Ins. Contracts § 356.

[4] *Harper*, 56 Cal. App. 4th at 1087; *Southern Cal. Gas Co. v. ABC Construction Co.* 204 Cal.App.2d 747(1962); *Ascherman v. General Reinsurance Corp.* 183 Cal.App.3d 307, 311 (1986).

1    Section 11580 "makes the judgment creditor a third-party beneficiary of the insurance contract between

2    the insurer and the insured," the Court finds that this result applies equally when the contractual

3    language mirrors the statute as it does here.  If Section 11580 creates a third-party beneficiary exception

4    through its language, it seems that the parallel contractual provision relied upon by Plaintiff does as

5    well.  In this instance, the policy unambiguously states that judgment creditors may bring suit against

6    the insurer, indicating the contracting parties' intent to benefit judgment creditors in situations such as

7    Plaintiff's.  Based on the rationale underlying the Section 11580 exception and utilizing traditional

8    contract principles, the Court concludes that Plaintiff has third-party beneficiary status by virtue of the

9    policy provision allowing suits to be brought by judgment creditors against the insurer.

10         2. *Payment of the SIR as a Condition Precedent to Coverage*

11         Defendant argues that the terms of the policy have not been met and, thus, Plaintiff has failed to

12   state a cause of action under the terms of the policy.  To support this contention, Defendant highlights

13   the policy explicitly states that Defendant "will not be liable for 'damages' that are not payable under

14   the terms of this policy or that are in excess of the applicable limit of insurance" and that no person may

15   sue Defendant "on this policy unless all of its terms have been fully complied with."  (Policy, Doc. No.

16   3-2, at 35.)  To determine whether Plaintiff has stated a cause of action, it is necessary to examine the

17   relationship between several policy provisions, specifically those regarding the SIR and Defendant's

18   obligations following EMC's bankruptcy.

19         As an initial matter, the policy contains a SIR provision, which states as follows:

20         We [the insurer] will pay those sums, in excess of the "self-insured retention", that the
          insured becomes legally obligated to pay as "damages" because of "bodily injury" or
21        "property damage" included within the "products/completed operations hazard" caused by
          products to which this insurance applies.
22
     (Policy, Doc. No. 3-2 at 27.)  The policy defines the SIR as:
23
          The amount that you or any insured pays: (1) pursuant to "judgments" or "settlements", as
24        "damages" because of "bodily injury" or "property damage," or (2) "defense expenses," or
          (3) any combination of (1) and (2), with respect to each "occurrence" to which the insurance
25        applies.

26   (*Id.* at 42.)  The SIR amount pursuant to the policy is $500,000.  (Policy, Doc. No. 3-2 at 8.)  The policy

27   further provides that the insured's "bankruptcy, insolvency or inability to pay the 'self-insured retention'

28   will not increase our obligations under this policy," but also that the "[b]ankruptcy or insolvency of the

12cv01884

1  insured or of the insured's estate will not relieve us of our obligations under this policy." (*Id.* at 34, 35.)

2

3        General contract principles provide that a contract between parties extends only to those things

4  intended to be encompassed in the agreement. *Id.* at 1476 (citing *Vons Companies, Inc. v. U.S. Fire Ins.*

5  Co., 78 Cal. App. 4th 52, 58–59 (2000)). Further, it is the court's duty to determine what terms are

6  substantively contained in the contract, and not to add or consider that which is omitted. *Id.* As the

7  court in *Vons Companies, Inc.* noted, "We do not have the power to create for the parties a contract that

8  they did not make and cannot insert language that one party now wishes were there." *Vons,* 78 Cal. App.

9  4th at 58–59. Defendants's policy does not state payment of the SIR is a condition precedent to

10  coverage. As such, this Court is prohibited from enforcing language absent from the terms of the policy.

11        Defendant argues that it "has no obligations under the policy until the insured has paid

12  $500,000." (Def. Mot. Doc. No. 3-1, at 14.) Further, Defendant contends payment of the SIR is "a

13  necessary condition to Plaintiff having a contractual claim against Defendant NOETIC under the terms

14  of the Policy," and absent such allegations in the complaint, Plaintiff has failed to state a cause of action.

15  *(Id.* at 16.) Defendant cites *Forecast Homes, Inc. v. Steadfast Ins. Co.* for the proposition that the SIR is

16  akin to primary insurance coverage, and thus coverage under Defendant's policy is not triggered until

17  the SIR is exhausted. (Def. Mot. Doc. No. 3-1 at 15.) The circumstances of *Forecast Homes*, however,

18  are distinguishable from those in the present case. The policy at issue in that case was obtained by

19  several subcontractors, and emphasized the issue of who was required to pay the SIR under the terms of

20  the policy, not the inability to pay a SIR due to insolvency. *Forecast Homes, Inc. v. Steadfast Ins. Co.,*

21  181 Cal. App. 4th 1466, 1470 (2010). Further, the policy in *Forecast Homes, Inc.* expressly stated, "it is

22  a condition precedent to our liability that you make actual payment of all damages and defense costs for

23  each occurrence or offense, until you have paid self-insured retention amounts and defense costs equal

24  to the [p]er [o]ccurence[.]" *Id.* at 1472. Defendant's policy does not include such language. To the

25  contrary, Defendant's policy expressly states that the insolvency of the insured will not relieve the

26  insurer of their obligations under the policy. (Policy, Doc. No. 3-2 at 34.)

27        Moreover, policy language stating that the insolvency of the insured "will not increase our

28  obligations under the policy" suggests that Defendant has an immediate duty under the policy to

12cv01884

1    indemnify its insured for any losses incurred during the policy period *regardless* of the status of the SIR.

2     (Policy, Doc. No. 2 at 34.)  Plaintiff's Complaint seeks the amount of the judgment less the $500,000

3    unpaid SIR.  Therefore, Plaintiff's request for damages does not seek to increase Defendant's obliga-

4    tions under the policy, whereas Defendant's contentions urge the Court to relieve it of all obligations

5    under the policy based on EMC's insolvency and resulting failure to pay the SIR.  Such a conclusion

6    directly contradicts the language of Defendant's policy.  If, in fact, Defendant did not incur an

7    obligation until payment of the SIR, language regarding an increase in obligation in the instance of an

8    insured's insolvency would be unnecessary.  Further, Defendant had the opportunity to include terms

9    requiring payment of the SIR to serve as a condition precedent to coverage, but failed to do so.  As such,

10   the Court will not create such an obligation where it does not already exist.

11          Plaintiff also provides authority from other jurisdictions that have adopted direct action statutes

12   similar to Insurance Code Section 11580 as support for her position that payment of the SIR is not

13   required to trigger coverage under the policy.  As noted previously, though Section 11580 does not

14   govern the policy, Plaintiff is afforded the ability to bring her action under the express terms of the

15   policy reflecting the relevant language of Section 11580.  Like Section 11580, the terms of the policy

16   provide that the bankruptcy or insolvency of the insured will not relieve the insurer of its obligations.

17   (Policy, Doc. No. 3-2 at 35).  Adopting Defendant's interpretation of the policy and requiring payment

18   of the SIR to trigger coverage, even in the event of the insured's insolvency, is contradictory to the

19   language of the policy.  Such a requirement would relieve Defendant of any obligation under the policy

20   following EMC's insolvency, and would also conflict with public policy as reflected by California's

21   direct action statute.[5]  While not controlling, this Court finds the underlying public policy persuasive in

22   reaching the conclusion that failure to pay the SIR, resulting from an insured's insolvency does not

23   prevent coverage from being triggered.

24          Based on the applicable rules of contract interpretation and supporting public policy, this Court

25   finds that payment of the SIR is not a condition precedent to coverage under the terms of Defendant's

26

27          [5] Other courts have recognized that even without a direction action statute, a SIR requirement
28   may be void as a matter of public policy if non-compliance by the insured voided coverage of existing
     claims.  *Gulf Underwriters Ins. Co. v. Burris*, 674 F.3d 999, 1005 (8th Cir. 2012), *reh'g denied* (May 3,
     2012).  *See also Rosciti v. Ins. Co. of Pennsylvania*, 659 F.3d 92, 99 (1st Cir. 2011).

12cv01884

1  policy.  Plaintiff has therefore stated a cause of action as a third-party beneficiary under the policy.

2  Accordingly, Defendant's Motion to Dismiss Plaintiff's second cause of action is denied.

3

4  **C.  Plaintiff's Breach of the Implied Covenant of Good Faith and Fair Dealing Claim**

5          Defendant contends Plaintiff's third cause of action for breach of the implied covenant of good

6  faith and fair dealing fails to allege that Defendant owed a duty to Plaintiff.  (Def. Mot. Doc. No. 3-1 at

7  16.)  In response, Plaintiff alleges the terms of the policy, authorizing Plaintiff to bring suit as a third-

8  party beneficiary to the policy upon obtaining a judgment against Defendant, serves as the basis for

9  Defendant's duty.  (Plaintiff's Mot. Doc. No. 8 at 15.)  Generally the implied covenant of good faith and

10  fair dealing runs only in favor of parties to the contract; thus, a third party may not make a claim for

11  breach of duties due under the covenant.  *See, e.g.*, *Coleman v. Gulf Ins. Group Co.*, 41 Cal.3d 782,

12  794–795 (1986).  Exceptions do exist, however, with respect to third-party beneficiaries of insurance

13  contracts, in which case, the implied covenant and its duties have been held to apply.  *See Northwestern*

14  *Mut. Ins. Co. v. Farmers' Ins. Group,* 76 Cal.App.3d 1031 (1978); *Murphy v. Allstate Ins. Co.,* 17 Cal.

15  3d 937, 943 (1976)(noting that, although a contract may not have been made solely for a third party's

16  benefit, a third party may enforce those promises directly made for him).  Additionally, under Section

17  11580(b)(2), a judgment creditor is entitled to bring an action against an insurer to recover final a

18  judgment against an insured.  In such an instance, the judgment creditor is treated as a third-party

19  beneficiary of the policy.  *Hand v. Farmers Ins. Exch*. 23 Cal. App. 4th 1847, 1859 (1994).

20          With respect to third parties and the implied covenant of good faith and fair dealing, the court in

21  *Hand v. Farmers* discussed the relationship between traditional liability insurance coverage and the

22  obligations imposed on an insurer.  *Id.* at 1857-58.  Absent the specific language of the policy, the court

23  in *Hand* inferred the traditional language of an insurance policy to include, "the usual promise to pay

24  'on behalf of the insured ... all sums which the insured shall become legally obligated to pay as damages

25  because of bodily injury or property damage....' " *Id.* (quoting *Zahn v. Canadian Indem. Co.* 57

26  Cal.App.3d 509, 511 (1976)).  The court noted that such language, which precisely mirrors the language

27

28

12cv01884

1  of the policy at issue,[6] imposes a duty on an insurer not to withhold payment of damages the insured

2  had become obligated by judgment to pay.  *Hand*, 23 Cal. App. 4th at 1857-58.  The implied covenant

3  of good faith and fair dealing serves as the basis for this duty, and is equally applicable whether an

4  insurer is dealing with the claims of the insured or the claims of a third party against the insured.[7]  *Id.*

5          Here, the terms of the policy provide that a third party is authorized to bring suit to "recover on

6  an 'agreed settlement' or on a final 'judgment' against an insured."  (Policy, Doc. No. 3-2 at 35.)

7  Plaintiff's Complaint alleges that the judgment obtained against Defendant on June 16, 2011, in the

8  amount of $1,052,982.19, became final pursuant to California Rule of Court Rule 8.104(a)(3) on

9  December 12, 2011.  (Compl. ¶ 32.)  Applying the aforementioned principles, Plaintiff thereby became a

10  third-party beneficiary under the terms of the Policy, entitling Plaintiff to the enforce the implied

11  covenant of good faith and fair dealing.  Insomuch as Plaintiff has alleged Defendant owes her a duty as

12  a third-party beneficiary under the terms of the contract, she has properly pled a cause of action for

13  breach of the implied covenant of good faith and fair dealing.  Therefore, Defendant's motion to dismiss

14  Plaintiff's third cause of action is denied.

15                              ***Conclusion***

16          For the reasons set forth above, it is ORDERED that Defendant's Motion to Dismiss be, and it

17  hereby is, GRANTED IN PART and DENIED IN PART.

18          More specifically, it is ORDERED that Defendant's Motion to Dismiss is GRANTED with

19  regard to Plaintiff's first cause of action under California Civil Code Section 11580.  Accordingly and

20  for the reasons set forth above, Plaintiff's first cause of action is DISMISSED WITHOUT PREJUDICE.

21

22          [6]Defendant's policy provides, "We will pay those sums, in excess of the "Self insured retention",
   that the insured becomes legally obligated to pay as 'damages' because of the 'bodily injury' or
23  'property damage' included within the 'products/completed operations hazard' caused by products to
   which this insurance applies."  (Policy, Doc. No. 3-2, at 27.)

24

25          [7] Defendant cites *Waller v. Truck Ins. Exch., Inc.,* for the proposition, "where there is no
   potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action
26  for breach of the implied covenant of good faith and fair dealing."  (Def. Mot. Doc. No. 3-1 at 17.)
   *Waller,* however, is focused on the issue of whether there was a duty to defend under the terms of a
27  policy when a third party seeks damages incurred as a result of the insured's noncovered economic or
   business torts.  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 10 (1995).  At issue in this matter is not
   whether there was a duty to defend, but whether the implied covenant of good faith and fair dealing is
28  applicable to a third party, in this instance, Plaintiff.  For this reason, the Court finds *Waller* to be
   unpersuasive.

1  It is further ORDERED that Defendant's Motion to Dismiss is DENIED with regard to Plaintiff's

2  second and third causes of action.  Any amended complaint must be filed within thirty (30) days of the

3  filing of this order. Defendants answer or other response must be filed within seventy (70) days of the

4  filing of this order.

5       IT IS SO ORDERED.

6

7  DATED:  January 22, 2013

8                                                    _____

9                                                    Hon. Anthony J. Battaglia
                                                     U.S. District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28